| | |
|---|---|
| MARQUIS YACHTS, a division of Genmar Yacht Group, LLC | Civil No. 09-1770 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| ALLIED MARINE GROUP, INC. (NORTH), ALLIED MARINE GROUP, INC. (SOUTH), RICHARD BERTRAM YACHTS, INC. (NORTH), and RICHARD BERTRAM YACHTS, INC. (SOUTH), | |
| Defendants. | |

Geoffrey P. Jarpe, **WINTHROP & WEINSTINE**, 225 South Sixth Street, Suite 3500, Minneapolis, MN, 55402, for plaintiff.

Richard Gurbst, **SQUIRE, SANDERS & DEMPSEY LLP**, 127 Public Square, 4900 Key Tower, Cleveland, OH, 44114; and Stephen C. Rathke, **LOMMEN ABDO, COLE, KING & STAGEBERG, P.A.**, 80 South Eighth Street, Suite 2000, Minneapolis, MN, 55402, for defendants.

This matter is before the Court on defendants' objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on December 7, 2009. After a *de novo* review of those objections, *see* 28 U.S.C. § 636(b)(1); D. Minn. Local Rule 72.2(b), the Court overrules the objections and adopts the Report and Recommendation for the reasons set forth below.

## BACKGROUND

Plaintiff Marquis Yachts, a division of Genmar Holdings, Inc.'s subsidiary Genmar Yacht Group, LLC ("Marquis"), manufactures luxury yachts. Pursuant to a dealer agreement, defendants Allied Marine Group, Inc. (North), Allied Marine Group, Inc. (South), Richard Bertram Yachts, Inc. (North), and Richard Bertram Yachts, Inc. (South) (collectively, "Allied"), was to sell yachts manufactured by Marquis. The dealer agreement states that any dispute between the parties, "whether sounding in contract, tort or otherwise . . . . shall be resolved by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association." (Dealer Agreement at 9, Defs.' Br. in Supp. of Objection, Ex. B, Docket No. 36.)

Before the parties formalized the dealer agreement, Marquis began constructing the first four of seven yachts. (Final Award at 3-4, Application for Confirmation of Arbitration Award, Ex. A, Docket No. 1.) Over the next few months, Allied selected several custom options for the four yachts, including hull color and electronics, and Marquis incorporated those options as it manufactured the yachts. (*Id.* at 4-5.) On July 1, 2008, Marquis requested that Allied provide order acknowledgements for five yachts (the aforementioned four under construction and one additional yacht) and provide a deposit for one yacht. (*Id.* at 7.) Allied failed to return the order acknowledgements and refused to submit the deposit, believing such failure relieved it of any obligation to purchase the yachts. (*Id.* at 5, 7-8.) Allied nonetheless continued to specify additional options for the yachts. (*Id.* at 7.) After it became clear that Allied would not purchase

any of the yachts under construction, Marquis mitigated its damages and was able to sell all but one of the yachts at issue.  (*Id.* at 8-9.)

On September 3, 2008, Allied initiated an arbitration action against Marquis with the American Arbitration Association ("AAA") seeking declaratory relief from any obligation to pay Marquis for the yacht remaining in Marquis' inventory.  (*Id.*)  Allied was aware that Marquis intended to file an arbitration claim on the same issue.  (Online Filing Demand for Arbitration at 2, Defs.' Br. in Supp. of Objection, Ex. A, Docket No. 33.)  On the same day, Marquis initiated its own arbitration action with the AAA seeking specific performance.  (Report & Recommendation at 2, Docket No. 28.)  The arbitration panel held a consolidated arbitration hearing on April 20, 21, and 22, 2009, and the panel issued an interim award in Marquis' favor on April 29, 2009.  (*Id.*)

On June 1, 2009, Genmar Yacht Group LLC and Genmar Holdings, Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Minnesota.  The arbitration panel ordered the parties to submit briefing on the effect on the arbitration proceedings of 11 U.S.C. § 362, which imposes an automatic stay on all actions and proceedings against the party petitioning for bankruptcy.  (Final Award at 18, Application for Confirmation of Arbitration Award, Ex. A, Docket No. 1.)  The panel finalized the arbitration award on June 25, 2009, ordering Allied to pay Marquis the purchase price and to accept delivery of the yacht, to pay sales and administrative costs related to Marquis' efforts to mitigate its damages, to pay interest accrued while Marquis awaited payment for the yachts, and to pay attorney's fees and administrative costs related to the arbitration proceedings.  (*Id.* at 13.)  The arbitration panel considered and

rejected the argument that the stay applied to the arbitration proceeding, concluding that "the Panel's Final Award in the present case will **enhance** the bankruptcy estate." (*Id.* at 18 (emphasis in original).) The panel noted, however, that its decision was "subject to potential consideration by the courts of the applicability of 11 U.S.C. [§] 362(a)(2)," and therefore concluded that the decision was not necessarily final. (*Id.* at 19.)

On July 10, 2009, Marquis filed a claim with this Court seeking confirmation of the final arbitration award. (Docket No. 1.) Allied's counterclaim requested vacatur of the arbitration award, arguing that the panel violated the automatic stay and that the award violates public policy. (Answer to Compl. & Countercl., Docket No. 2.) Marquis moved for summary judgment. (Docket No. 4.) The Magistrate Judge recommended that the Court grant Marquis' motion confirming the arbitration panel's final award, grant Marquis post-award prejudgment interest, and deny Marquis' request for post-award attorney's fees. (Report & Recommendation at 7, Docket No. 28.)

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party, giving it the benefit of all reasonable inferences that

can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Federal courts may vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). When considering whether to enforce an arbitral award, courts afford extraordinary deference to arbitrators. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588-89 (2008); *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the court, even if convinced that the arbitrator made a serious error, must confirm the arbitrator's award. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). This deference is not, however, a "grant of limitless power." *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 799 (8th Cir. 2004) (internal quotation marks omitted). To determine whether an arbitration panel exceeded its authority, courts must broadly construe the agreement and resolve all doubts in favor of the panel's authority. *Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999 (D. Minn. 2008) (citing *United Food & Commercial Workers, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc.*, 113 F.3d 893, 895 (8th Cir. 1997)).

## II.    ANALYSIS

Allied objects to the Report and Recommendation, arguing: (1) the automatic stay applies to the arbitration proceedings, (2) the arbitration panel exceeded its authority in

its interpretation of the dealer agreements, and (3) the Magistrate Judge erred in recommending monetary damages that the arbitration panel did not award. The Court addresses the arguments in turn.

## A.    Automatic Stay

The act of filing a bankruptcy petition operates as an automatic stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case[.]"  11 U.S.C. § 362(a)(1).  The automatic stay presumptively applies to arbitration proceedings.  *See In re Nerland Oil, Inc.*, 303 F.3d 911, 914 (8th Cir. 2002); *see also In re Gull Air, Inc.*, 890 F.2d 1255, 1262 (1st Cir. 1989) ("[T]he scope of section 362(a)(1) is broad, staying all proceedings, including arbitration[.]").  Despite this breadth, "[t]he automatic stay . . . does not divest all other courts of jurisdiction to hear every claim that is in any way related to the bankruptcy proceeding."  *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (citation omitted).  For example, the stay applies only to proceedings "against the debtor."  *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989).  Proceedings brought by the debtor against other parties do not fall within the proscription of the automatic stay.[1]  *Id.*

---

[1] In addition, "[m]inisterial acts . . . do not fall within the proscription of the automatic stay."  *In re Soares*, 107 F.3d 969, 973-74 (1st Cir. 1997).  Here, however, the parties provided the panel with further briefing after Genmar Holdings, Inc. and Genmar Yacht Group, LLC filed the bankruptcy petition, and therefore the Court cannot say that the panel's entry of the final

(Footnote continued on next page.)

Allied argues that the arbitration panel exceeded its authority under 9 U.S.C. § 10(a)(4) in concluding that the automatic stay did not halt the arbitration proceedings. The Court agrees with the arbitration panel's conclusion that Section 362(a)(1) does not affect the award, but reaches that conclusion for reasons that differ from those articulated by the panel.

### 1. The Court Reviews the Arbitration Panel's Interpretation of Section 362(a)(1) De Novo.

The arbitration panel "considered the parties' memoranda related to the application of an automatic stay pursuant to 11 U.S.C. [§] 362, based on Genmar's filing for protection under Chapter 11 of the Bankruptcy Code." (Final Award at 2, Application for Confirmation of Arbitration Award, Ex. A, Docket No. 1.) The panel, noting the "against the debtor" phrase in Section 362(a)(1) and citing *ACandS v. Travelers Casualty & Surety Co.*, 435 F.3d 252, 259 (3d Cir. 2006), stated that the "Final Award in the present case will *enhance* the bankruptcy estate," and therefore concluded that the automatic stay did not apply to the panel's proceedings. (*Id.* at 18.) The panel also noted that even though Allied was the first party to file a demand for arbitration, "the only affirmative relief ever at issue herein has been Marquis' right to recover damages from

_____

(Footnote continued.)

award was simply a ministerial act. *Cf. In re Knightsbridge Dev. Co.*, 884 F.2d 145, 148 (4th Cir. 1989) (holding that "the arbitration award [was] void as the product of a continuing pre-petition proceeding" where the arbitration panel engaged in deliberations after the petition was filed).

Allied. Even if Allied had fully prevailed on the merits of its claim, it would not have received damages or other affirmative relief." (*Id.* at 18.)

The Court "affords the [arbitration panel's] decisions an extraordinary level of deference and confirms so long as the [panel] is even arguably construing or applying the contract and acting within the scope of [its] authority." *Crawford Group*, 543 F.3d at 976 (internal quotation marks omitted). Vacatur of an arbitral award is appropriate, however, "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Whether the "extraordinary level of deference" extends to the panel's determination that the automatic stay did not apply to the arbitration proceedings is a question of first impression for the Court.

The Court concludes that it should review the panel's determination of the applicability of Section 362(a)(1) *de novo*. Courts afford extraordinary deference to arbitration decisions because the parties have contractually consented to arbitration. *See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008). The scope of the automatic stay, however, has implications extending beyond the contracting parties. The stay's purpose is, in part, to protect the interests of creditors in the bankruptcy estate. *See Martin-Trigona*, 892 F.2d at 577 ("[The automatic stay] protects the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors."). Genmar's creditors did not agree to submit the dispute between Marquis and Allied to arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotation marks omitted)).  Indeed, the debtor cannot waive the automatic stay.  *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Because the automatic stay serves the interests of both debtors and creditors, it may not be waived and its scope may not be limited by a debtor.").  The question of whether the arbitrators "exceeded their powers" by violating the automatic stay therefore differs from the typical "exceeded their powers" inquiry under 9 U.S.C. § 10(a)(4), which focuses on whether the parties agreed to submit a particular dispute to arbitration.  *See, e.g.*, *Stark*, 381 F.3d at 799-801.  The question of the applicability of the automatic stay presents one of the "narrow circumstances" in which courts give the arbitration panel's findings no deference.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *cf. ACandS*, 435 F.3d at 258 ("A long-standing exception to this general rule [of deference to an arbitrator's findings] provides that courts may refuse to enforce arbitration awards that violate well-defined public policy as embodied by federal law. We hold that the automatic stay provision of the Bankruptcy Code promotes a public policy sufficient to preclude enforcement of an award that violates its terms or interferes with its purposes." (citation omitted)).  *But see Hall Street*, 552 U.S. at 584 (holding that 9 U.S.C. § 10 enumerates the exclusive statutory grounds for vacating an arbitral award).

## 2. The Automatic Stay Applies to Allied's Claim in the Arbitration Proceedings, but Not to Marquis' Counterclaim in Those Proceedings.

"Congress chose to stay only actions against the debtor and not those by him even though each can have adverse effects on the estate and other third party interests." *Haag v. United States*, 485 F.3d 1, 4 (1st Cir. 2007). Courts have recognized that "[a]ll proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case." *Mar. Elec.*, 959 F.2d at 1204. As the Eighth Circuit has observed:

> Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue.

*In re Duncan*, 987 F.2d 490, 491 n.2 (8th Cir. 1993) (quoting *Mar. Elec.*, 959 F.2d at 1204-05) (emphasis removed); *accord In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002); *Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir. 1995). "[C]ounterclaims asserted by a debtor are not actions 'against the debtor' which are subject to the automatic stay." *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.*, 39 F.3d 563, 568 (5th Cir. 1994). Counterclaims asserted against a debtor are subject to the automatic stay, but "[d]efenses [asserted against the debtor], as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and the defendant in the bankrupt's suit is not, by

opposing that suit, seeking to take possession of it." *ACandS*, 435 F.3d at 259 (internal quotation marks omitted). "In determining whether a continuing proceeding . . . is against the debtor, we normally examine the posture of the case at the initial proceeding." *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 366 (5th Cir. 1993).

At the initial proceeding and throughout the arbitration, Allied maintained a claim for declaratory relief against Marquis, and Marquis maintained a claim against Allied for specific performance and mitigation damages. Allied's claim against Marquis is an action "against the debtor" and therefore was subject to the automatic stay. There is no exception in Section 362(a) for claims for declaratory relief that do not seek monetary damages. The automatic stay did not apply, however, to Marquis' claim against Allied.[2] To the extent that the arbitration panel ruled on Allied's claim for declaratory relief, the panel violated the automatic stay and exceeded its powers. *See* 9 U.S.C. § 10(a)(4). The panel should have stayed that action and decided only Marquis' claim for relief.

### 3. The Scope of the Automatic Stay Is Not Contingent on Whether the Award Enhances the Bankruptcy Estate.

The arbitration panel erred in failing to identify which claims were "against the debtor" and which were brought by the debtor and in failing to stay the claim that was against the debtor. The panel instead focused on the outcome of the arbitration.

---

[2] "[T]he bankrupt's cause of action is an asset of the estate[.]" *Martin-Trigona*, 892 F.2d at 577. As Marquis' counsel confirmed in a hearing before the Magistrate Judge, "there is no dispute, nor could there ever be any, that this award is an asset of the bankrupt[cy] estate." (Hr'g Tr. at 31, Docket No. 40.)

Courts have rejected such a wait-and-see approach to determining whether the automatic stay applies to a particular proceeding. "[W]hether a proceeding is against the debtor within the meaning of Section 362(a)(1) is determined from an examination of the posture of the case at the initial proceeding." *Freeman v. Comm'r*, 799 F.2d 1091, 1092-93 (5th Cir. 1986) (per curiam). "That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983) (internal quotation marks omitted). "It is inconceivable that Congress intended or envisioned construction of the phrase 'against the debtor' to oscillate in any given judicial proceeding depending upon which stage of trial the action had progressed on the date of the filing of the bankruptcy petition." *Id.*

Whether the ultimate outcome of a proceeding favors the debtor is not dispositive. In a case pre-dating *ACandS*, the Third Circuit held:

> The automatic stay's effect on judicial proceedings against the debtor does not depend upon whether the court finds for or against the debtor. Once triggered, the automatic stay of an action pending against the debtor in district court continues until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay. Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*.

*Mar. Elec.*, 959 F.2d at 1206 (citations and internal quotation marks omitted); *see also Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 373 (10th Cir. 1990) ("[T]he fact that judgment here was entered in favor of the debtor does not change the outcome. . . . [W]hether a case is subject to the automatic stay must be determined at its inception. The

operation of the stay should not depend upon whether the district court finds for or against the debtor." (internal quotation marks, citation, and emphasis omitted)).

The arbitration panel relied on *ACandS*, a Third Circuit opinion authored by then-Judge Alito, in which the debtor challenged an arbitration award as violating Section 362(a). 435 F.3d at 255. ACandS, the debtor, had been "one of the nation's largest installers of asbestos insulation," and in 1988 it reached an agreement with its insurer, Travelers Casualty, regarding the allocation of coverage between products claims and operations claims. *Id.* at 255-56. The agreement provided that the parties would submit any disputes over reallocation of coverage first to mediation and then, if the mediation did not succeed, to binding arbitration. *Id.* at 256. In 2000, ACandS filed a motion for declaratory judgment seeking to have certain claims recognized as separate occurrences. *Id.* The district court then granted a joint motion for a stay pending arbitration. *Id.* In 2001, ACandS filed a formal demand with Travelers Casualty seeking an increase in the allocation of claims to operations, and the parties ultimately proceeded to arbitration on that claim. *Id.* at 256-57. Before the arbitration panel issued its award, ACandS petitioned for Chapter 11 bankruptcy. *Id.* at 257. After the panel issued its award, ACandS filed a motion in federal court seeking vacatur. *Id.* The district court denied the motion and affirmed the award, and also dismissed the 2000 motion as moot. *Id.*

*ACandS* adopted an outcome-oriented test, holding that in arbitration proceedings the automatic stay attaches as soon as the scope of the parties' submissions supports an award that could diminish the bankruptcy estate. *Id.* at 260. The Third Circuit rejected the district court's finding "that the automatic stay did not apply because the arbitration

was an action initiated by the debtor." *Id.* at 259. The court explained that the nature of arbitration makes it difficult to identify whether the arbitration is a proceeding "against the debtor":

> While in the context of a trial it is simple to distinguish between claims and counter-claims that may support judicial relief, in the context of arbitration, especially in the absence of a joint statement of issues submitted, it is impossible to definitively classify the arguments presented. Travelers contends that its arguments in favor of a zero allocation of claims to the products coverage should be classified as a permissible defense. Defenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it. In the trial context, a defendant's failure to formally plead a counter-claim prevents the court from granting affirmative relief on the basis of the defendant's arguments. By contrast, an arbitration award will be affirmed so long as its form can be rationally derived from either the agreement between the parties or the parties' submissions to the arbitrators and the terms of the arbitral award are not completely irrational. This procedural flexibility, which is essential to the utility of arbitration, allows Travelers to make a colorable argument that it respected the stay by merely defending its interests when there is no question that in the trial context it would have been required to file a counterclaim in order to obtain the result it seeks to uphold.

*Id.* at 259-60 (internal quotation marks, citations, and emphases omitted). The court stated that "the panel's authority must yield when a dispute threatens the rights of third parties in violation of the laws of the United States." *Id.* at 260. The court held that, "[t]o avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish ACandS's estate." *Id.* Hence, the court argued, "[b]y continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void." *Id.*

The Court does not find *ACandS* persuasive.  *ACandS* is not consistent with the guidance of other circuits that emphasizes that the automatic stay applies only to proceedings "against the debtor," even though actions brought by the debtor also "can have adverse effects on the estate and other third party interests."  *Haag*, 485 F.3d at 4; *Ellis*, 894 F.2d at 373 ("The operation of the stay should not depend upon whether the district court finds for or against the debtor.").  *ACandS* did not address the requirement that arbitrators and courts disaggregate the claims to stay only those against the debtor and to allow other claims to go forward.  *See In re Duncan*, 987 F.2d at 491 n.2; *Maritime Elec.*, 959 F.2d at 1204-05.  *ACandS* is also inconsistent with the rule that courts are to determine "whether a proceeding is against the debtor within the meaning of Section 362(a)(1) . . . from an examination of the posture of the case at the initial proceeding."  *Freeman*, 799 F.2d at 1092-93.  *ACandS* also raises the danger that parties involved in arbitration initiated by a business that has petitioned for bankruptcy would seek declaratory relief that they do not owe the business any money.  According to the Third Circuit's reasoning, such claims (or counterclaims) might go forward, so long as they do not run the risk of diminishing the bankruptcy estate.  Such actions are nonetheless "against the debtor" and fall within the scope of the automatic stay, despite the fact that they may not have the potential to diminish the bankruptcy estate.

The Court also does not find *ACandS* applicable to the arbitration proceedings in this case.  Two circumstances critical to the Third Circuit's reasoning in *ACandS* are not present here, and therefore, even if the Eighth Circuit were to adopt *ACandS*'s outcome-oriented test, the Court would not apply that test to the facts of this case.  First, the

arbitration proceedings in *ACandS* involved claims brought by ACandS, the debtor, and no readily identifiable claim by Travelers Casualty against the debtor. Travelers Casualty did not expressly raise a counterclaim, but did ultimately make a submission that sought affirmative relief that would have diminished the bankruptcy estate.[3] Here, however, both parties brought claims, and the plain language of Section 326(a)(1) applies to Allied's claim. The panel did not identify any difficulty in classifying the claims in the arbitration proceeding as claims brought by or against the debtor. Second, Travelers Casualty's position evolved during the arbitration proceedings, while Allied's position and requested relief remained consistent throughout its arbitration proceedings with Marquis. Hence, the special circumstances that prompted the Third Circuit to adopt its outcome-oriented test are not present here.

### 4. The Court Declines to Modify the Arbitral Award

"A district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." *Stark*, 381 F.3d at 799 (internal quotation marks omitted). Section 11 authorizes a reviewing court to modify an arbitration award under only limited circumstances:

> (a)  Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

---

[3] Under the reasoning articulated in Part II.A.2 above, the arbitration panel in *ACandS* should have construed that submission as raising the equivalent of a counterclaim. Indeed, even if Travelers Casualty's submission had simply sought declaratory relief that would not have diminished the bankruptcy estate, the arbitration panel should have construed the submission as raising a counterclaim, and should have stayed proceedings on that counterclaim.

(b)     Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c)     Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

The Court does not have authority under Section 11 to modify the arbitration award. In ruling on Allied's claim for declaratory relief, which fell within the scope of the automatic stay, the panel arguably "awarded upon a matter not submitted to them." 9 U.S.C. § 11(b). Nonetheless, that matter had no effect on "the merits of the decision upon" Marquis' claim against Allied, which was also a "matter submitted" to the panel and over which the panel had jurisdiction. *See id.* Therefore, even though the arbitrators exceeded their powers in failing to disaggregate the claims and in deciding Allied's claim for declaratory relief, the Court does not have authority to modify the arbitration award.[4]

For the foregoing reasons, the Court concludes that the automatic stay applied to Allied's claim against Marquis but did not apply to those portions of the arbitration

---

[4] If the Court is mistaken and the automatic stay applied to the entire arbitration, Marquis may still be able to obtain relief. Some courts have recognized that "the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d)." *Picco*, 900 F.2d at 850. Therefore, if Allied persists in challenging the validity of the arbitration award, Marquis may petition the bankruptcy court to lift the stay to the extent that it may apply to the arbitration and to Marquis' efforts to confirm the award in this Court. *See id.* ("[E]ven if the district court's decision did violate the automatic stay when it was entered, the bankruptcy court's order lifting the stay cured any defect."); *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("[A]ctions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay."). *But see Mar. Elec.*, 959 F.2d at 1207 n.11 (questioning "whether a bankruptcy court may exercise its equitable powers to retroactively rehabilitate judicial acts and proceedings which would otherwise be void *ab initio* as violations of the automatic stay").

proceedings that involved Marquis' claims against Allied. Because the arbitration panel exceeded its powers under 9 U.S.C. § 10 in deciding Allied's claim against Marquis, but acted within its powers in deciding Marquis' claim against Allied, the Court must consider two options: vacating the entire award or modifying the award. The Court is not authorized to modify the arbitration award because there is no evidence that the panel's decision on Allied's claim against Marquis affected the merits of the panel's decision on Marquis' claims against Allied. The Court declines to vacate the entire award because the panel was acting, in part, within its powers by continuing the arbitration proceedings and issuing the final award on Marquis' claim after Genmar petitioned for bankruptcy.

### B.    The Arbitration Panel's Interpretation of the Dealer Agreements

Allied and Marquis entered into arbitration pursuant to the dealer agreement. This dispute falls within the scope of § 3.7 of the dealer agreement, which states that "any action, whether sounding in contract, tort, or otherwise . . . arising out of or in connection with [this agreement]" shall be resolved by binding arbitration. (*See, e.g.*, Marquis Yachts Dealer Agreement 2009 Model Year § 3.7, Docket No. 14.) Allied argues that the arbitration panel exceeded its powers by ignoring plain language in the dealer agreement.

As noted above, 9 U.S.C. § 10(a)(4) allows the Court to vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." This Court does not have the power or prerogative to second-guess the arbitration panel's

findings as to the contractual dispute, and must give those findings an "extraordinary level of deference." *Crawford Group*, 543 F.3d at 976.

The parties do not dispute that the arbitration panel had authority under § 3.7 of the dealer agreement to decide any contract claims. Indeed, both parties pursued arbitration on the same day. Instead, Allied argues that the arbitration panel "exceeded [its] powers" by incorrectly interpreting the dealer agreement. *See* 9 U.S.C. § 10(a)(4). "Judicial review of arbitration awards is narrow because arbitration is intended to be the final resolution of disputes. Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). The interpretation of the dealer agreements is a factual finding within the authority of the arbitration panel. The panel identified the relevant portions of the dealer agreement and applied them to the facts presented in the arbitration proceedings. The Court defers to the panel's findings and concludes that the panel did not exceed its powers in construing the dealer agreement.

Allied argues that beyond the statutory provisions, this Court can invalidate arbitral awards on the broad grounds of "public policy." *Hall Street* clarified that "Sections 10 and 11 of the FAA provide the exclusive grounds for vacating and modifying an arbitration award," and courts cannot use extra-statutory bases to vacate arbitral awards pursuant to FAA claims. 552 U.S. at 586; *Prime Therapeutics*, 555 F. Supp. 2d at 999; *see also Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 355

(5th Cir. 2009) (holding that manifest disregard of the law no longer constitutes a non-statutory ground for vacating awards under the FAA).

In *Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, the United States District Court for the Southern District of Florida, relying on *Hall Street*, considered and rejected the defendant's claim that public policy is a valid non-statutory basis for vacatur under the FAA. 583 F. Supp. 2d 1288, 1290-91 (S.D. Fla. 2008). The *Arminak* court acknowledged that *Hall Street* allows for the possibility that other grounds could provide a proper basis for vacatur where the parties do not seek review of the arbitration award under the FAA. *Id.* at 1291 (quoting *Hall Street*, 552 U.S. at 590); *see Hall Street*, 552 U.S. at 590 ("In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable."). The court concluded that it could not consider non-statutory grounds for vacatur, such as public policy, because the plaintiff petitioned for confirmation of the award under the FAA and because the defendant had "not filed a motion to vacate pursuant to a non-FAA alternative that also governs the enforcement of arbitration awards (e.g., a system for enforcement under either state statutory law or state common law)." *Id.*

The Court agrees with and adopts *Arminak*'s reasoning. Public policy is not one of the exclusive statutory grounds that the FAA provides for vacating arbitration awards.

Allied provides no explanation for why state law should govern vacatur in this instance or of how state law would support vacatur.

### C.    Post-Award Interest

Allied argues that the Magistrate Judge erred in recommending that the Court order Allied to pay Marquis monetary damages not awarded by the arbitration panel.[5]

The final award directs Allied to complete the purchase and take delivery of the yacht, and to compensate Marquis for certain pre-award interest, mitigation damages, attorney's fees, and arbitration fees and expenses. The Magistrate Judge recommended that the Court order Allied to pay Marquis the contracted price for the yacht and that Allied accept delivery of the yacht. The Magistrate Judge specified that Allied should pay Marquis a total of $2,987,170.53, which is the sum Marquis requested, and which includes specific performance of payment of the $2,731,174 purchase price of the yacht. Other than the issue of prejudgment interest, discussed below, the Court finds no appreciable difference between the final arbitration award and the Magistrate Judge's recommendation.[6] To the extent that Allied objects to the Magistrate Judge's decision to

---

[5] Marquis does not object to the Magistrate Judge's recommendation that the Court deny Marquis' request for post-award attorney's fees, and therefore the Court denies Marquis' request for summary judgment to the extent that it requests such fees. (*See* Pl.'s Mem. in Opp'n to Defs.' Objection to Report & Recommendation, Docket No. 38.)

[6] According to the Court's calculations, the arbitration panel awarded Marquis a total of $2,988,127.70, including $2,731,174 in performance on the contract to purchase the yacht, $6,484.05 in mitigation damages, $91,301.75 in interest, $113,782.08 in attorney's fees and expenses, and $45,385.82 in arbitration expenses and arbitrator fees. Marquis, however, represented that the final award "requires Defendants to pay Marquis the aggregate sum of

(Footnote continued on next page.)

combine the specific performance portion of the final award with the other monetary relief in the final award, the Court's order reflects which portion of Allied's monetary obligation to Marquis is specific performance and which portion comprises the monetary award of mitigation damages, attorney's fees, interest, and arbitration expenses.

Generally, prejudgment interest is appropriate "when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because [he] has been denied the use of money which he was legally due." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). Prejudgment interest serves several purposes: compensating prevailing parties for the true costs of damages, deterring attempts to benefit unfairly from the unavoidable delays of litigation, and promoting settlement in cases where liability and the amount of damages are fairly certain. *Id.* (citing *Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 674 (8th Cir. 1981)). Courts should award prejudgment interest so long as no exceptional or unusual circumstances exist that would make such an award inequitable. *Ohio River Co. v. Peavey Co.*, 731 F.2d 547, 549 (8th Cir. 1984). Allied offers no specific objection to the Magistrate Judge's recommendation that the Court award prejudgment interest. (*See* Objections, Docket No. 31.)

---

(Footnote continued.)

$2,987,170.53." (Application for Confirmation of Arbitration Award at 1, Docket No. 1.) Because neither party has questioned this minor discrepancy, and because the discrepancy operates in Allied's favor, the Court declines to order Allied to pay Marquis more than what Marquis requested in its application for confirmation of the arbitration award.

Marquis has suffered avoidable delay waiting to receive the final award. The arbitration panel finalized the award in late June. After the panel issued the final award, Allied refused to pay, prompting Marquis to file the instant petition for confirmation. The Magistrate Judge issued the Report and Recommendation in mid-December, but Allied objected to it, compounding the avoidable delay. Allied has had unfair benefit of the money for several months. The Court finds no exceptional or unusual circumstances that might make an award of prejudgment interest inequitable.

**ORDER**

Based on the foregoing, and all the records, files and proceedings herein, the Court **OVERRULES** Defendants' objections [Docket No. 31] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 28] as modified. Accordingly, **IT IS HEREBY ORDERED** that:

1.     The Final Arbitration Award is **CONFIRMED**:

     a.     With respect to the award of specific performance:

          i.     Allied is **ORDERED** to pay Marquis $ 2,731,174; and

          ii.     Marquis is **ORDERED** to deliver and Allied is **ORDERED** to accept delivery of the Marquis 720 Tri-Deck Yacht, hull No. A2004.

     b.     With respect to the remainder of the award, Allied is **ORDERED** to pay Marquis $255,996.53 in mitigation damages, interest, attorney's fees and costs, and arbitration fees and expenses.

2.      Allied is **ORDERED** to pay Marquis post-award interest on the sum of $2,987,170.53, accrued from June 25, 2009 to the date judgment is entered at an annual prejudgment interest rate of four (4) percent.

3.      Plaintiff's Motion for Summary Judgment [Docket No. 4] is **GRANTED in part and DENIED in part** as follows:

a.      Plaintiff's request for post-award attorney's fees is **DENIED**; and

b.      In all other respects, Plaintiff's motion for summary judgment is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 31, 2010
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge